UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| LANCELOT INVESTORS FUND, L.P., *et al.* | ) | Case No.  08-28225, *et al.* |
| | ) | (Jointly Administered) |
| Debtor. | ) | |
| | ) | Hon. Jacqueline P. Cox Presiding |

**FINAL FEE APPLICATION OF MISSION CAPITAL ADVISORS, LLC,
FINANCIAL ADVISOR FOR THE TRUSTEE, FOR COMPENSATION FOR
SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE
PERIOD FROM APRIL 20, 2009 THROUGH MAY 31, 2014**

Mission Capital Advisors, LLC ("MCA"), Financial Advisor for Ronald R. Peterson, the chapter 7 trustee (the "Trustee") for the bankruptcy estates of each of the debtors in the cases jointly administered in the above captioned case (the "Debtors"), hereby submits this final fee application (the "Final Application") for allowance of compensation for services rendered for the period from April 20, 2009 through May 31, 2014 (the "Final Application Period") in the total amount of $199,346 in fees, and seeking payment of $45,860 in fees, and $4,206.79 in expense, pursuant to sections 328, 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 5082-1 of the Local Rules of the United States Bankruptcy Court for the Northern District of Illinois (the "Local Rules"), and the United States Trustee Fee Guidelines — Guidelines for Reviewing Applications for Compensation and Reimbursement of Disbursements Filed under 11 U.S.C. § 330 (Appendix A to 28 C.F.R. § 58) (the "UST Guidelines").  In support of this Final Application, MCA hereby states as follows:

**INTRODUCTION**

1.  This Court has jurisdiction over the Final Application pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  The statutory predicates for the relief requested herein are sections 328, 330 and 331 of the Bankruptcy Code, as supplemented by Bankruptcy Rule 2016, Local Rule 5082-1, the UST Guidelines and the Interim Payment Order and the Supplemental Order (as hereinafter defined).

**BACKGROUND**

3.  On October 20, 2008, the Debtors filed petitions for relief under chapter 7 of title 11 of the United States Code (the "Cases"). Thereafter, the United States Trustee for the Northern District of Illinois appointed Ronald R. Peterson as Trustee.

4.  The Debtors consist of 19 related entities engaged in the operation of hedge funds. The 19 entities consist of five funds, Lancelot Investors Fund, L.P. ("Lancelot I"), Lancelot Investors Fund II, L.P. ("Lancelot II"), Lancelot Investors Fund, Ltd. ("Lancelot Ltd."), Colossus Capital Fund, LP ("Colossus Onshore"), and Colossus Capital Fund, Ltd. ("Colossus Ltd.," and together with Lancelot I, Lancelot II, Lancelot Ltd., and Colossus Onshore, the "Funds"). The remaining 14 entities are special purpose vehicles, wholly owned by one or more of the Funds, through which the Funds conducted various types of lending transactions.

5.  As of October 11, 2008, the Debtors collectively purportedly had assets with a value of approximately $1.8 billion. Of that, approximately $1.444 billion in face amount of the Debtors' purported assets purportedly consisted of loans to or investments in Petters Group Worldwide and related entities (the "Petters Notes").

6. As of the Petition Date, the Debtors held participations, either as a loan participant or as co-lender (collectively, the "Loan Investments") in thirteen real estate loan facilities with a total face amount of approximately $94.229 million (the "Loans"). These Loan Investments are participations or co-lending interests in commercial real estate and real estate development loans. The Debtors were not the lead lenders and the Trustee does not control these Loans. Unfortunately, the real estate projects underlying the Loans were in all cases in some state of distress.

7. On April 29, 2009, the Court entered an order, *nunc pro tunc* to April 20, 2009, authorizing the retention of MCA to assist the Trustee in valuing and liquidating the Debtors' various real estate interests pursuant to an agreement letter (the "Retainer Agreement") entered into between the Trustee and MCA. (Docket No. 197).

8. The Retainer Agreement, attached hereto as Exhibit A, contemplated compensation as follows:

    a. A $25,000 advisory fee for MCA completing a preliminary evaluation of the Debtors' real estate interests and advising the Trustee on potential sale strategies for these interests (the "Phase I Payment").

    b. A $50,000 advisory fee for MCA conducting, at the Trustee's request, a detailed pricing analysis and review of the Debtors' real estate interests and an accompanying report detailing this analysis and review (the "Phase II Payment").

    c. A $75,000 advisory fee for MCA commencing, at the Trustee's request, a sale process for some or all of the Debtors' real estate interests (the "Phase III Payment").

    d.  For all of the Debtors' real estate interests that are sold, settled or otherwise transacted, the Trustee was to pay a success fee of (a) 4% of any interest sold up to $10 million, (b) 3% of any interest sold from $10 million to $20 million, and (c) 2% for any interest sold for over $20 million. The success fee payable by the Trustee was to be reduced by the amount of the Phase I and Phase II fees paid by the Trustee to MCA.

  9.  The Court's April 29, 2009 Order authorized the Trustee "to make immediate payment of the Phase I fee . . . ." In addition, this Order provided that "[c]ompensation of [MCA] for services rendered and reimbursement of expenses incurred in connection with its representation of the Trustee shall be pursuant to applications to be submitted to and approved by this Court . . . ." (*Id*.) On March 11, 2011, the Court entered an Order Granting the First Interim Fee Application of Mission Capital Advisors, LLC, as Financial Advisor for the Trustee, for Payment of Interim Compensation for Services Rendered for the Period from April 20, 2009 through July 19, 2010 (the "First Fee Order"). (Docket No. 667). Pursuant to the First Fee Order, the Trustee paid MCA $128,486 for serviced rendered from April 20, 2009 through July 19, 2010 (the "First Application Period"). The payment amount was the sum of (i) the $50,000 Phase II Payment and (ii) the 4% success fee owed to MCA from the Trustee's receipt of $1,962,146 from the sale of certain property, securing the Intelligent Loan (discussed below) or $78,486. As discussed below, the Trustee never formally requested MCA to begin the sale process so MCA was never paid the $75,000 Phase III fee contemplated by the Retainer Agreement.

4

**The Loan Investments**

10. Kennedy Funding, Inc. ("KFI") acted as agent with respect to eight of the Loans in which the Debtors were co-lenders; Anglo-American Servicing, Inc. or one of its affiliates (collectively, "Anglo-American") sold participation interest in three of the Loans to the Debtors; and Cordell Funding, LLP and one of its affiliates (collectively "Cordell") sold the Debtors' participation interests in two of the loans. The collateral underlying the three Anglo-American loans (Johnstown, Biloxi and Intelligent) has been foreclosed on and sold and the Trustee has received the estates' pro rata share of the sales proceeds, net of expenses. The Trustee has also received his pro rata share, net of expenses, from the sale of the property securing one of the loan made by Cordell secured by property in Indianapolis. The Trustee entered into a settlement agreement with Cordell, pursuant to which the Trustee sold his interest in the Shreveport Loan to a buyer selected by Cordell for $565,000.

11. As part of his settlement agreement with KFI, the Trustee sold his interest in two of the loans for which KFI was the agent (Braffits Creek and Trinity Town Center) to buyers selected by KFI. Two of the loans agented by KFI (Costa I and Costa II) proved to be worthless, due to the existence of significant development bonds which were senior in interest to the mortgages held by KFI on the property securing the loans. MAA, an affiliate of Morris Anderson and Associates, Ltd., has replaced KFI as agent on the remaining four KFI loans (Wight River, BVC, Harbor Development and Clearwater).

12. Because of the disposition of nine of the loans, and MAA stepping in as agent for the remaining four loans, the Trustee no longer has a need for MCA's services.

**PAYMENT AND REIMBURSEMENT REQUESTED**

13. MCA submits this Final Application for payment of compensation for actual, reasonable, and necessary professional services performed by it as financial advisor for the Trustee during the Final Application Period. This is MCA's final application.

14. The term of the Retainer Agreement between the Trustee and MCA was only 120 days, although the term could be extended by written notice for an additional 30 days. The Trustee informally extended the term of the Retainer Agreement by continuing to request services from MCA. Although the Trustee did not formally ask MCA to begin the Phase III sales process, MCA was retained by KFI to try to sell the Braffits Creek Loan on behalf of all of the co-lenders in that loan, which included the Trustee. MCA is, therefore, arguably entitled to pay the $75,000 Phase III fee, which became due under the Retainer Agreement when MCA "commenced the sales process for all or some" of the Loans. MCA, in exchange for certain concessions by the Trustee discussed below, has agreed to waive its right to this fee.

15. Pursuant to the Retainer Agreement entered into between the Trustee and MCA and approved by the Court, MCA is arguably entitled to a 4% commission on the $580,000 the Trustee realized for the sale of the Debtors' interest in the Braffits Creek Loan and Trinity Loan as part of the Trustee's settlement agreement with KFI, or $23,200.00. The sale price for the Braffits Creek Loan and the Trinity Loan was a compromise amount, which took into account certain expenses KFI asserted were owed by the bankruptcy estates to KFI. Additionally, MCA is arguably entitled to a 4% commission on funds recently received by the Trustee as a result of Anglo-American's sale of the collateral underlying the Johnson and Biloxi Loans. The funds received were $389.29 and $555,971.62, respectively. The Trustee also received a final distribution in the amount of $10,151.06 on account of Anglo's sale of the collateral securing the

Intelligent Loan. All of these amounts received by the Trustee from Anglo-American were net of expenses Anglo-American charged to the Debtors. MCA has agreed to limit its claim for commissions from the sales of these properties to $22,660 (4% of the sum of $389.29, plus $555,971.62, plus $10,151.06). (As previously noted, MCA has already been paid the commission owed to it resulting from the Trustee's receipt of $1,962,146 from the sale of the Intelligent property.)

16. Under the Retainer Agreement, MCA is entitled to have its commission calculated based on the Debtors' share of the gross sales price. MCA, however, has agreed to have its commission determined based on the net amounts received by the Trustee form KFI, Cordell and Anglo-American. MCA has also agreed to forego commission owed on (i) any subsequent distributions from Anglo-American from amounts retained by Anglo-American from the proceeds of the sales of the Johnstown properties to cover future expenses, or (ii) the sale of the Shreveport Loan. Due to all of the concessions by MCA, the Trustee has agreed to waive his right to reduce the total commission due to MCA by the Phase I $25,000 fee and Phase II $50,000 fee he previously paid to MCA. The Trustee has also agreed to waive his right to argue that no amounts are due to MCA since the sales arguably occurred after the term of the Retainer Agreement.

17. Therefore, MCA seeks a total of $199,346 in fees and $4,206.79 in expenses, or $203,552.79 in total, consisting of:

    a. Phase I fee of 25,000;
    b. Phase II fee of $50,000;
    c. Commission on sale of Intelligent Loan of $78,486;
    d. Commission on sale of KFI loans of $23,200;
    e. Commission of sale of Anglo-American Property of $22,660; and
    f. Expenses of $4,206.79.

Of that amount $153,486.00 has already been paid by the Trustee and $50,066.79 is unpaid. MCA has agree to accept this amount in full and final satisfaction of its claims against the these estates.

18. Attached hereto as <u>Exhibit B</u> is MCA's invoice that lists MCA's requested compensation pursuant to its agreement with the Trustee as outlined herein. The supporting documentation for MCA's requested reimbursement of expenses is attached as <u>Exhibit C</u>.

19. All of the services for which interim compensation is sought were rendered to the Trustee solely in connection with these Cases, in furtherance of the duties and functions of the Trustee and not on behalf of any individual creditor or other person.

20. MCA has not entered into any agreement, express or implied, with any other party for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in this case.

21. MCA has not shared, or agreed to share, (a) any compensation it has received or may receive with another party or person, other than with its own members and associates, or (b) any compensation another person or party has received or may receive. No promises have been received by MCA or any member thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

22. The Trustee has reviewed and approved MCA's fee statement prior to the filing of this Final Application.

**BASIS FOR PAYMENT**

23. Professional services for which compensation are sought were rendered and expended on behalf of the Trustee pursuant to chapter 7 of the Bankruptcy Code. The Trustee and MCA believe it is appropriate that MCA be compensated for these services. All of the fees

sought to be paid or reimbursed in this Final Application were actual, necessary, and reasonable, and benefited the Debtors' estates and creditors. The fees payable by the Trustee will be allocated among the Funds based on their ownership interests in the respective loans as set forth on Exhibit B attached hereto.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

24. The foregoing professional services rendered during the Final Application Period were necessary and appropriate to assist the Trustee with the administration of the Cases and were in the best interests of the Debtors. Compensation for the foregoing services as requested is commensurate with the complexity, importance, and nature of the problems, issues, or tasks involved.

25. Section 330 provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . ." 11 U.S.C. § 330(a)(1). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, the extent, and the value of such services, taking into account all relevant factors, including
>
>     (A)    the time spent on such services;
>
>     (B)    the rates charged for such services;
>
>     (C)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
>     (D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

9

      (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

*Id.* § 330(a)(3).

  26. In the instant case, MCA respectfully submits that the services for which it seeks compensation in this Final Application were necessary for and beneficial to the Trustee's efforts in administrating the Debtors' estates, and necessary to and in the best interests of the Debtors' estates. MCA further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services provided to the Trustee.

  27. In sum, the services rendered by MCA were necessary and beneficial to the Debtors' estates, and were consistently performed in a timely manner commensurate with the complexity, importance, and nature of the issues involved. Accordingly, approval of the final compensation sought herein for the Final Application Period is warranted.

  WHEREFORE, MCA respectfully requests: (i) allowance of compensation for professional services rendered during the Final Application Period in the amount of $199,346; (ii) reimbursement of expenses in the amount of $4,206.79; (iii) authorization for the Trustee to pay MCA the unpaid fees and expenses due to it in the amount of $50,066.79 for the professional services rendered during the Final Application Period; and (iv) that the Court grant MCA such other and further relief as is just.

           Respectfully submitted,

           BY:  */s/ William David Tobin*
              William David Tobin, on behalf of
              Mission Capital Advisors, LLC

Dated: July 31, 2014